LANE & BART-
LETT
*vs.*
ROBINSON.

---

Lane & Bartlett *vs.* Robinson.

Case 23.

APPEAL FROM TAYLOR CIRCUIT.

18m 623
91　193
18m 623
f101 230

1. The right of a vendor of goods purchased with the fraudulent intent of not paying for them, exists whilst the goods are in *transitu*, and until the goods reach their place of destination, but no longer.

2. The general rule is that the *transitus* is at an end when the property comes either into the actual possession of the vendee, or to that place where, by his authority, it is intended for his use, or to await his orders, and nothing farther is to be done with the property until a re-sale has taken place, or it has been applied to the vendee's purposes. If the vendee has acquired dominion over the goods the right of stoppage in *transitu* is at an end. (*Cross on the law of lien*, 370; *Law Lib*; 2 *Kent*, 545.)

3. Delivery to an agent to convey to the vendee is not such delivery as will defeat the right of stoppage in *transitu;* but if the delivery be to a carrier for *safe-custody,* or for disposal on the part of the vendee, the transit terminates, and the right of stoppage also.

4. When goods are fraudulently purchased with the intent not to pay for them, the chancellor has, and had before the enactment of 1838, (3 *Stat. Law*, 116,) power to afford relief to the vendor unless the goods had reached the hands of an innocent purchaser. (5 *J. J. Marshall*, 446; 7 *B. Monroe*, 84.) An attaching creditor is not to be regarded as an innocent purchaser, as his lien is subordinate to that of the vendor.

5. The provisions of the Code, in respect to the order in which attachments shall be levied, is directory, and the failure of the sheriff to comply literally with them will not vitiate the lien resulting to the attaching creditors, in whose behalf the levy has been made.

Chief Justice WHEAT did not sit in this case.

[The facts of the case appear in the opinion of the court. REP.]

*J. T. Golder,* for appellant—

The appellants complain of the decision of the circuit court giving priority of lien to Robinson &

Ferand, under their attachments to which the appellants think they are entitled.

1. If the right of Lane & Bartlett to stop the goods in *transitu* existed it could not be defeated by the levy of attachments on the goods by other creditors. (*Hause & Son vs. Judson, &c.*, 4 *Dana* 8, and the authorities there cited.)

2. Did the right of stoppage exist? It is clear from the proof that the goods were purchased with the fraudulent extent of not paying for them, and the debts created by the purchase is undisputed. Had the goods reached their destination, and had they been received by Robinson, or by an agent for him? It is supposed they had not. The goods were to be delivered to Palatine Robinson, in Campbellsville. They were delivered to Redman in Campbellsville, without any authority from Robinson. There was no delivery or any act tantamount to a delivery. (See *Kent's Com.* 2 *vol. page* 543; *Coats vs. Railton*, 6 *Barn. & Cress*, 442; *Buckley vs. Furniss*, 15 *Wendell*, 137; *Covel vs. Hitchcock*, 23; *Ib.* 60; *Edwards vs. Brewer*, 3 *Meason & Welby*, 375; 15 *B. Monroe*, 279.)

3. The appellants are entitled to relief upon the ground that the goods were fraudulently obtained from them, and they have an equitable right to be satisfied their debt out of the goods, and that equity is elder and superior to any of the attaching creditors, who cannot be treated as innocent purchasers. (5 *J. J. Marshall*, 451; 1 *Bibb*, 213; 3 *Marshall*, 390.)

4. Robinson's attachment was sued out upon insufficient allegations and affidavit, and the amendment cannot have the effect of reaching back and attaching to the commencement of his suit, and taking precedence of the intervening attachments, which were properly issued, and to the prejudice of Lane and Bartlett. Robinson had acquired no lien when his amended petition was filed. (*Mitford's Pleading*, 400; 6 *B. Monroe*, 130, *and* 150; 10 *Ib.* 88.) If, therefore, Lane & Bartlett are made to occupy the posi-

tion of attaching creditors only, they are prejudiced by the decision of the circuit court.

*John Shuck*, for Robinson—

Lane & Bartlett had not the right to insist on a rescission of the contract of sale to Palatine Robinson, though the purchase might have been for a fraudulent purpose. (*Gibson vs. Moore, &c.*, 7 *B. Monroe*, 92.)

But the appellants insist that the goods were in *transitu*, and therefore they had the right to stop them. This may be doubted. Can it be the case that goods bought at Louisville, boxed up, marked to the purchaser, delivered to the carrier and conveyed to their place of destination, and the freight paid, are to be regarded as still in transitu? The goods had reached the point of delivery; the impulse given to them at Louisville was at an end. Under these circumstances the decision of the circuit court was right. (*Chitty on Contracts*, 433; 2 *Kent*, 545.)

Robinson's original petition and affidavit taken together are sufficient to show a proper ground for his attachment. A rigid technicality ought not to be required in such proceedings; the defendant himself has not appeared to contest their regularity. He had collected $2,800 of Thos. Robinson's money, and ran off with it, or at least part of it, and does not appear to contest any of the attachments against him. Will this court subject the petition and affidavit to a rigid scrutiny at the instance of another less vigilant creditor, whose prospect of success is to be thereby promoted, not because of his own vigilance, but because he, by his counsel, may find some defect in the proceedings of a rival creditor.

If the original petition of Robinson should be regarded as defective, the amendment will supply the defect. The case of *Taylor vs. Smith*, 17 *B. Monroe*, is not understood as deciding that no amendment can be made; that question was not decided; that such amendment should be allowed is consistent with

LANE, &c.
vs.
ROBINSON.

the scope and policy of the Code. But *sec.* 161 *of the Civil Code* is referred to to show this right. The word *proceeding* is used. The words *pleading or suit*, was not sufficiently comprehensive—a word of the broadest signification is used. It is undoubtedly broad enough to include the affidavit. It seems that *sec.* 294 leaves no doubt on the question. That section provides expressly that the judge, on hearing a motion out of court to discharge an attachment, shall have power to admit amendments by the plaintiff— the same that he would have in court. For the security of those having meritorious claims this construction should prevail. An affirmance is asked.

*Barbee*, for Ferand—

The questions involved are in regard to priority of lien, under the several attachments against the property of Pal. Robinson, who had left the state to defraud his creditors. Thomas Robinson sued out the first attachment, and it was first levied, and he insists on his priority of lien in virtue thereof. Ferand procured the second, and all contend that he acquired priority of lien because the attachment of Robinson issued without any sufficient affidavit having been made to authorize its issual according to the requisitions of the Code of Practice. (*Sec.* 221.)

After levy of Ferand's attachment Robinson attempted to amend his affidavit, and cure the defect in the original petition, to the prejudice of another attaching creditor. It might be good as against the defendant, but not an intermediate attaching creditor. (*Taylor vs. Smith*, 17 *B. Monroe*, 544.)

Lane & Bartlett rely upon the alleged fact that the goods were fraudulently obtained from them, and that therefore their lien is elder and superior to any attaching creditor.

As to their right to stop the goods in transitu it is insisted that was gone. The goods had arrived at their place of destination, been delivered over, and

the freight paid several weeks before any attachment issued.

A reversal is asked for Ferand.

Judge STITES delivered the opinion of the court.

On the 18th February, 1856, Thomas Robinson brought his action against Palatine Robinson, and caused an attachment to be issued and levied upon a tract of land, and sundry articles of personalty, including a lot of groceries bought by the defendant of appellants, who were grocers in the city of Louisville.

On the 19th of the same month Ferrand, another creditor, procured his attachment against the same defendant, and it was also levied on the same property.

On the 25th of the same month appellants filed their petitions, alleging that the groceries thus attached were purchased of them by Palatine Robinson, with the fraudulent intent of not paying therefor; that in accordance with his directions, they had forwarded them by wagon to him at Campbellsville, but that he having absconded, and not being there upon the arrival of the groceries, they were delivered by the carrier without authority to one Redman, and had not reached the hands or possession of the vendee when the attachments of Ferrand and Tho. Robinson were levied, and claimed and asserted their lien as vendors, and also insisted upon their right of stoppage *in transitu*, as vesting them with superior claim to the proceeds of the groceries. An attachment was likewise sued out and levied at their instance.

On the 22d March following, Davis, another creditor, filed his petition setting up his demand against Palatine Robinson, and alleged that the attachment of Thomas Robinson was illegal and wrongfully obtained, and claimed priority in virtue of his attachment, which was likewise levied on the land.

On the 10th November, 1856, and before any motion, answer, affidavit, or appearance in behalf of

Palatine Robinson, Thomas Robinson amended his petition and affidavit, and reasserted his rights under his original attachment.

The other attaching creditors denied the right of the vendors to a prior lien, and interpleaded with each other as to who was first entitled.

Upon final hearing the circuit court decided that Thomas Robinson was first entitled, and postponed the other creditors; and, there not being enough to satisfy his demand, Lane and Bartlett have appealed.

It is contended in their behalf,

1st. That their lien was superior to that of the other creditors because the groceries had not reached their place of destination, and their right of stoppage *in transitu* existed when the attachments were levied, and should have been upheld.

2d. That the title to the groceries was still in them because of the fraudulent intent of the vendee at the time of the sale; and that as vendors they had a prior equitable lien upon the proceeds; and,

3d. That Thomas Robinson's attachment was illegal and unauthorized, and was not cured by the subsequent amendment so as to give him a lien.

1. Whether appellants, as vendors, had a right of stoppage *in transitu*, when the attachments were levied, depends upon the question as to their transitus and arrival at their place of destination. Such lien exists until the transitus is ended, and the goods reach their destination, but no longer.

When the transitus ends depends in a great measure upon the particular facts of each case. The general rule, in all cases of sale and transmission of goods, seems to be, that the transitus is at an end when the property comes either into the actual possession of the vendee, or to that place where, by his authority, it is destined for his use, or to await his orders, and nothing further is to be done with the property until a re-sale has taken place or it has been applied to the vendees purposes. It is not necessary,

1. The right of a vendor of goods purchased with the fraudulent intent of not paying for them, exists whilst the goods are in *transitu*, and until the goods reach their place of destination, but no longer.
2. The general rule is that the *transitus* is at an end when the property comes either into the actual possession of the vendee, or

in order to divest the vendor or consignor of his right of stoppage in transitu, that the goods sho uld have come to the very hands of the vendee or consignee himself. The inquiry is whether they are to be considered as still in transit; for if once fairly arrived at their destination, so as to give the vendee actual exercise of dominion over them, the right of stoppage is gone. (*Cross on the Law of Lien*, 370; *Law Library*; 2 *Kent*, 545.)

With regard to constructive delivery it is said, by Chancellor Kent, "that if the delivery to a carrier or ' agent of the vendee be *for the purpose of conveyance* ' *to the vendee*, the right of stoppage continues, not- ' withstanding such a constructive delivery to the ' vendee; but if the goods be delivered to the carrier ' or agent for *safe custody*, or for disposal on the part ' of the vendee, and the middle-man is by the agree- ' ment converted into a special agent for the buyer, ' the transit or passage of the goods terminates, and ' with it the right of stoppage." (*2d Kent*, 545.)

An application of these principles to the facts of this case leaves no room to doubt that the transit of the goods in question had ended before the levy of the attachments, and consequently that the vendors right of stoppage was then no longer in existence.

The goods were bought for the purpose, as the proof shows, of setting up a retail grocery or bar in Campbellsville, Taylor county, Kentucky. They were marked for the vendee at that place, and forwarded accordingly. The wagoner who carried them says that "when he got to Campbellsville, Pal. Robinson, ' (the vendee) was not there, and, upon being inform- ' ed by Thomas Robinson that he knew nothing about ' the goods, he then told George Redman that he had ' better pay him for the hauling and *keep them for Pal*, ' which he did; and he then delivered the goods to ' Redman in Campbellsville to *keep* for Pal. Robinson, ' and he said he would keep them for him, and paid ' the carriage, &c."

LANE, &c.
*vs.*
ROBINSON.

to that place where, by his authority, it is intended for his use, or to await his orders, and nothing farther is to be done with the property until a re sale has taken place, or it has been applied to the vendee's purposes. If the vendee has acquired dominion over the goods, the right of stoppage in *transitu* is at an end.— (*Cross on the law of Lien*, 370, *Law Lib*; 2 *Kent* 545.)

2. Delivery to an agent to convey to the vendee is not such delivery as will defeat the right of stoppage in *transitu*; but if the delivery be to a carrier for *safe custody*, or for disposal on the part of the vendee, the transit terminates, and the right of stoppage also.

LANE, &c.,
*vs.*
ROBINSON.

He also proved that he had been told by the man in the warehouse in Louisville, on whose authority he got the goods from Lane and Bartlett, that Robinson had rented a house from Redman to put the goods in. But that he (the wagoner) had no authority to deliver them to any one but Robinson himself.

It likewise appears that a month or so previous to purchase of the goods Robinson had proposed to Redman "something about fixing up a bar in his (Redman's) tavern," but that no such arrangement was made. And also that the vendee had resided in the vicinity of Campbellsville, but had never appeared in the county since the delivery of the goods, and had absconded to parts unknown.

It is evident, from these facts, that the goods had reached the place where they were destined to be used, and applied to the vendee's purposes. And although the carrier had no express authority to deliver them to any one but the vendee, still he had the power, in the absence of the vendee, for whom he, as carrier, and for the purposes of the bailment, was an agent, to select a custodian of the goods, or in the words of Chancellor Kent to appoint "a middle man," and constitute him a special agent *to keep* the goods for the vendee. The property had fairly arrived at Campbellsville, the place of its destination, and was delivered to Redman, who undertook, not to send it forward to another place, or to continue the transit, but to keep it at the place to which it had been sent for the vendee. The transit was ended, and the right of stoppage gone.

2. It cannot be doubted that the groceries were bought by the vendee with the fraudulent intent of not paying for them. This is manifest from his conduct at the time of the purchase, and his subsequent acts. Nor have we any doubt of the right of a vendor in such case to a vacation of the contract and restoration of the property unless it has passed into

the hands of innocent purchasers for value, and without notice of the fraud.

Courts of equity had ample power to afford relief in such cases before the enactment of the law of 1838, (3*d* *Stat. Law*, 116,) as held by this court in *Bradbury vs. Kneas*, 5, *J. J. Mar.* 446, and in *Gibson vs. Moore*, 7 *B. Mon.* 84. And the only question here is, do the attaching creditors occupy such attitude, by reason of the prior levy of their attachments, as to preclude appellants from the relief they would have been entitled to against their vendee?

It cannot be said that they are purchasers for value, and without notice. The title to the goods remained with the vendee until sold by order of the Chancellor. The lien created by their attachments was a mere equity, and subordinate necessarily to other prior subsisting equities.

And no reason exists why, as between attaching creditors and vendors asserting an enforcible equity growing out of the contract of sale, the latter should not be preferred. It would certainly be unjust to subject to the payment of the debts of their fraudulent vendee, goods he had improperly obtained from them, and which, in equity, they were entitled to reclaim. This would virtually secure to such vendee the fruits of his fraud by the payment of his debts to the extent of the value of the goods, and defeat the equity of the vendor and the object of the statute.

In *Gibson vs. Moore*, *supra*, where the contest was, as here, between the vendors of goods to a fraudulent vendee, and the attaching creditors of the latter; but where the creditors, after the levy of their attachments, and before the vendors had asserted their equity, had obtained the legal title to the attached effects by a deed of trust executed by the vendee, this court decided that the creditors occupied the attitude of purchasers for value; and inasmuch as they had no notice of the fraud, preferred them to the vendors. The decision however rested upon the ground that they had obtained the deed upon a sufficient

LANE, &c.,
*vs.*
ROBINSON.

4. When goods are fraudulently purchased with the intent not to pay for them, the chancellor has, and had before the enactment of 1838, (3 *St.Law*, 116,) power to afford relief to the vendor unless the goods had reached the hands of an innocent purchaser. (5 *J.J. Mar.* 446; 7 *B. Mon.* 84.) An attaching creditor is not to be regarded as an innocent purchaser, as his lien is subordinate to that of the vendor.

LANE, &c.,
*vs.*
ROBINSON.

consideration; and their equity aided by the legal title of course prevailed. But the creditors in this case enjoy no such advantage, and their equity being the younger must give way to that of the vendors.

Our opinion therefore is, that appellants as vendors of the property were in equity entitled to the proceeds of the groceries, and the circuit court erred in postponing them to the attachment creditors.

3. It seems to us that the objections taken to the validity of the attachment of Thos. Robinson are not well founded.

The affidavit states the nature of the demand and that it is just; and sets forth the amount the affiant believes himself entitled to recover. It likewise states that the defendant "is about to waste or dispose of ' his property with the fraudulent intent to cheat or ' delay his creditors in the collection of their debts," which is substantially the ground mentioned in the 8th subdivision of sec. 221 of the Civil Code upon which an attachment may issue.

5. The provisions of the Code, in respect to the order in which attachments shall be levied, is directory, and the failure of the sheriff to comply literally with them will not vitiate the lien resulting to the attaching creditors, in whose behalf the levy has been made. The sheriff may in such case amend his return to conform to the facts.

The provisions of the Code with respect to the order in which levies under attachments, and returns thereof shall be made are directory; and a failure of the Sheriff to comply literally with them, does not vitiate the lien resulting to the attaching creditor in whose behalf the levy has been actually made. The Sheriff may, as in other cases, amend his return and make it conform to the facts of the case.

No error is perceived in the record prejudicial to appellants except that already indicated, and for that alone the judgment is *reversed*, and cause remanded with directions to the court below to appropriate to the benefit of appellants the proceeds of the groceries attached, and for other proceedings not inconsistent with this opinion.